IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PAMELA POOLE,                          §
                                       §
        Plaintiff,                     §
                                       §
v.                                     §        Civil Action No. H-09-3341
                                       §
CENTRAL CREDIT SERVICES,               §
INC.,                                  §
                                       §
        Defendant.                     §

## ORDER

Pending before the Court is Wauson Probus' Application for Attorney's Fees and Expenses and Memorandum of Law in Support Thereof (Document No. 8). Having considered the motion, submissions, and applicable law, the Court determines that Wauson Probus's motion should be granted.

## BACKGROUND

On October 15, 2009, Plaintiff Pamela Poole ("Plaintiff"), represented by Wauson Probus ("Wauson Probus"), filed this case alleging claims against Defendant Central Credit Services, Inc. ("CCS") for violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Texas Collection Practices Act ("TCPA"), TEX. FIN. CODE § 392.001 *et seq.*, and the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.41.  After the parties

discussed the allegations and CCS listened to a tape recording, CCS requested Plaintiff to make an initial demand. On December 29, 2009, Plaintiff sent CCS a letter asking for $15,000.00 in damages, and $5,488.66 in attorneys' fees and expenses. On December 30, 2009, CCS tendered a Rule 68 Offer of Judgment (the "Offer") offering Plaintiff $1,500.00 in damages and reasonable attorney's fees "limited to time and amounts expended on Plaintiff's claims in this matter through the date of Plaintiff's counsel's receipt of service of this Offer." *See* FED. R. CIV. P. 68.

On January 13, 2010, Plaintiff filed a Notice of Rule 68 Offer and Acceptance with the Court, accepting the Offer. On the same day, Plaintiff's counsel sent CCS's counsel a statement of his legal fees and expenses, totaling $6,791.53. On January 19, 2010, Wauson Probus filed this Application for Attorney's Fees and Expenses seeking $7,771.53 in fees and expenses—$7,291.50 in attorneys and paraprofessional fees and $480.03 in expenses. On February 1, 2010, Wauson Probus filed a reply to CCS's response ("Reply") and agreed to waive some of the legal fees it requested in its application, reducing the total fees requested to $6,535.03—which includes $6,055.00 in attorneys fees and $480.03 in expenses. The parties agree attorneys fees for the prevailing party are statutorily awarded pursuant to Section 1692k(a)(3) of the FDCPA.  15 U.S.C. § 1692k(a)(3).  Under the FDCPA, a successful plaintiff is entitled to an award of the costs of the action and reasonable attorney's fees as

2

determined by the Court. 15 U.S.C. § 1692k(a)(3).[1] The parties' dispute arises from the amount of attorneys' fees and expenses Wauson Probus requests. Specifically, CCS argues the number of hours Wauson Probus worked on the underlying matter is not reasonable and the billable rate was not a reasonable rate.

## STANDARD OF REVIEW

Attorneys' fees requests in the United States Court of Appeals for the Fifth Circuit are governed by the "lodestar" analysis. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996); *Turner v. Oxford Mgmt. Serv., Inc.*, 552 F. Supp. 2d 648, 650 (S.D. Tex. 2008). The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by the movant's attorneys' reasonable hourly billable rate. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995).

In determining whether the amount of time expended on a matter is reasonable, courts are to review time records supplied by the movant and exclude from the lodestar calculation all time that is "excessive, duplicative, or inadequately

---

[1] Texas law governs the award of attorneys' fees under the TDCA and DTPA. The analysis is virtually identical to that used by the federal courts. *See Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006); *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812, 818–19 (Tex. 1999).

documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley*, 461 U.S. at 432). In setting a reasonable billing rate, courts are directed to consider the attorney's regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Plaintiffs bear the burden of demonstrating that the hours expended and rates charged by counsel are reasonable. *See Hensley*, 461 U.S. at 427. Evidence of reasonableness of a proposed hourly rate must include an affidavit of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896. Appropriate rates can be determined through direct or opinion evidence about what local attorneys charge under similar circumstances. *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989); *Norman v. Hous. Auth.*, 836 F.2d 1292 (11th Cir. 1988).

Once the lodestar figure is determined, the court may adjust the figure upward or downward as necessary to make the award of attorneys' fees reasonable, while ensuring the fee award does not provide a windfall to the plaintiff. *See Hensley*, 461 U.S. at 429. Although courts have "broad discretion in setting the appropriate award of attorneys' fees," there is a strong presumption that the lodestar amount is reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d

4

795, 800 (5th Cir. 2006).

In deciding whether to make an adjustment to the lodestar figure, the court is instructed to consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). They include:

(1)   The time and labor required to represent the clients;

(2)   The novelty and difficulty of the issues in the case;

(3)   The skill requisite to properly perform the legal services;

(4)   Preclusion of other employment by the attorney due to acceptance of the case;

(5)   The customary fee charged for those services in the relevant community;

(6)   Whether the fee is fixed or contingent;

(7)   The time limitations imposed by the client or circumstances;

(8)   The amount involved and the results obtained;

(9)   The experience, reputation, and ability of attorneys;

(10)   The undesirability of the case;

(11)   The nature and length of the professional relationship with the client; and

(12)   Awards in similar cases.

*Id.* at 717–19.   The Court is to give "special heed to the time and labor

5

involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). But the most critical factor in the analysis is the "degree of success obtained." *Id. See also Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Hensley*, 461 U.S. at 436. Moreover, some of these factors are subsumed in the initial lodestar calculation. *See Saizan*, 448 F.3d at 800. Thus, if the calculation of the lodestar figure already took a specific factor into account, the court cannot consider it to adjust the lodestar value. *Id.* Doing so would be impermissible double counting. *Id.* at 800 (citing *Migis*, 135 F.3d at 1047).

## LAW & ANALYSIS

Wauson Probus seeks to recover $6,535.03—which includes $6,055.00 in attorneys' fees and $480.03 in expenses—from CCS for its representation of Plaintiff in connection with the underlying matter.[2] The $6,055.00 requested for fees is the product of 17.3 hours worked by the partner-in-charge, Mr. Probus, billed at $350.00

---

[2] As previously discussed, in its Motion Wauson Probus requested $7,291.50 in total fees—$6,311.50 in legal fees and $480.03 in expenses. The partner-in-charge, Mr. Probus, worked 17.3 hours and planned to work an additional 2.8 hours in connection with this Motion. Thus, Wauson Probus requests an award for 20.1 hours at Mr. Probus's $350.00 hourly rate. A paraprofessional worked a total of 2.7 hours billed at $95.00 per hour. In its Reply to CCS's response, Wauson Probus agreed to withdraw its application for time spent on this Motion and time billed for the paraprofessional, reducing the total time requested for legal fees to 17.3 hours– $6,055.00 in total.

per hour. The $480.03 in expenses includes: $350.00 in filing fees; $120.00 for process service; $1.00 for a Secretary of State fee; $8.43 for postage; and $0.60 for telecopies. CCS does not contest Wauson Probus's request for attorneys fees and costs. It only objects to the number of hours and the hourly rate billed. Accordingly, the Court will address those arguments and then consider whether the lodestar figure, which is produced from those two factors, should be adjusted pursuant to any of the twelve *Johnson* factors.

## I.    Calculating the Lodestar Figure

The lodestar figure is determined by multiplying the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433–34; *Forbush*, 98 F.3d at 821. This calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services. *Hensley*, 461 U.S. at 433. The party seeking an award of fees should submit evidence supporting the hours worked and rates claims. *Id.* Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Id.*

### A.    Hours Reasonably Expended on the Litigation

Wauson Probus submitted its record of time spent on this matter. The records show Mr. Probus worked 17.3 hours, which does not include the preparation of this Motion or preparation of the Reply. CCS asserts these claimed fees are "outside the

7

scope of the offer of judgment, unnecessarily duplicative, excessive, and not based on the number of hours reasonably expended." CCS enumerates six reasons for its disagreement with the requested fees: (1) some of the tasks were outside the scope of the Offer; (2) the fees were administrative or secretarial in nature; (3) the fees were duplicative; (4) the fees were not made in advancing the litigation; (5) some of the fees would not have been billed to Plaintiff; and (6) the fees were "generally excessive and not billable." CCS requests this Court to limit the number of awarded fees to 4.8 hours. The Court declines to do so. The Court reviewed the time records submitted by Wauson Probus in detail and finds the tasks billed for are well documented, sufficiently detailed, and reasonably appropriate for the underlying case. *Cf. Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). For example, the longest duration of time billed by Mr. Probus for one billing entry was 4.5 hours during which Mr. Probus described he was "[d]rafting Plaintiff's Original Complaint; telephone discussion with Ms. Poole regarding complications to adding creditor as defendant and her instruction not to sue creditor; e-filed complaint." The Court finds 4.5 hours to be reasonable considering the matters Mr. Probus handled within that time. Discussing the complaint with the client and drafting the complaint are critical parts of the litigation process. CCS suggests the Court should reduce this time to 1.5 hours

8

without basis or first-hand knowledge as to how long it took Mr. Probus to collect all of the information he needed from Plaintiff, to adequately explain to her the extent of her available claims and remedies, and to draft and file the complaint. Notwithstanding a careful review of the records, the Court will address CCS's six arguments.

### 1. Billing for tasks outside the scope of the Rule 68 Offer of Judgment

CCS states Wauson Probus requests fees for tasks performed outside of the Offer. CCS argues Wauson Probus is not entitled to any fees performed after it tendered the Offer on December 30, 2009 because of the restrictions provided in the Offer. The Court is not bound by the agreement of the parties as to the amount of attorneys' fees, though. *Forbush*, 98 F.3d at 822 (quoting *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980)). The Court must consider only "whether the attorney's fees proposed are reasonable." *Id.* Additionally, Wauson Probus withdrew its request for fees to compensate it for tasks performed by Mr. Probus after December 30, 2009 and all fees initially requested for tasks completed by a paraprofessional. Accordingly, the Court finds CCS's argument moot.

### 2. Reimbursement for fees incurred which are part of normal office overhead

CCS contends Wauson Probus improperly seeks reimbursement for fees

incurred for tasks that are part of normal office overhead and purely administrative or secretarial in nature. In its Reply, Wauson Probus withdrew its requests for fees performed by its paraprofessional rendering most of CCS's contention moot. The remaining time entry CCS disputes is 0.2 hours on October 19, 2009 Mr. Probus billed for receiving and calendaring an Order for an Initial Conference. Although purely administrative or secretarial tasks cannot be billed at a lawyer's rate, *see Jenkins*, 491 U.S. at 288, the Court finds 0.2 hours (approximately 12 minutes) to review an Order and schedule a conference is reasonable and finds reviewing an Order is not purely administrative.

3.    *Reimbursement for fees which are duplicative and wasteful*

CCS states Wauson Probus is seeking fees for tasks both the attorney and the paraprofessional performed. Wauson Probus withdrew its requests for fees performed by its paraprofessional; thus, CCS's arguments are moot.

4.    *Reimbursement for fees not made in advance of litigation*

CCS complains Wauson Probus seeks reimbursement for fees not made in advance of the underlying litigation. It does not specify any basis for this claim, though. But after a careful review of the billing records, Wauson Probus billed for fees made only in advance of the underlying litigation. Accordingly, the Court finds the argument unpersuasive.

5.    *Reimbursement for fees in which it does not charge its client and therefore cannot be charged to its adversary*

CCS asserts Wauson Probus is billing CCS for fees it ordinarily would not charge its client. CCS's assertion is based on two Internet sites which list attorneys in the Houston area.[3] It states Wauson Probus improperly requests fees for an initial consultation, even though the Internet cite listings indicate clients receive a free initial consultation. Hours that are not properly billed to one's client cannot be billed to one's adversary. *Hensley*, 461 U.S. at 434. Wauson Probus asserts it was unaware of and does not pay for either of those listings on the website. It contends its only authorized advertising is on the firm's website and in the yellow pages of the Windstream Sugar Land phone directory. Wauson Probus does not advertise a free

---

[3]The first Internet site CCS cites is http://houston-tx.areag2.com. The Internet site lists over 10,000 commercial litigation attorneys in the Houston area alone. It is unclear if the Internet site collects information from attorneys to post on its Internet site or if it has simply compiled this list without direction or instruction from the attorneys through Internet scraping—a technique of extracting information from websites and transforming the content into structured data that can be stored in a central website—or another compilation method. After reviewing the Internet site, it appears the listings are simply compiled by the site developer or host and are not paid for by the attorneys. Many of the descriptions of the firms are incomplete. Additionally, CCS ignores Mr. Probus's listing, which is located in the column next to the Wauson Probus listing. The tags under Mr. Probus's name do not include "free initial consultation." The second Internet site CCS cites is http://attorneypages.com. Like the first Internet site, it appears this site compiles a list of names of attorneys and law firms. A Google search of Wauson Probus produces over 3,000 Internet sites. It would be impossible for Wauson Probus to monitor every website that lists it or any of its attorneys, as CCS seems to suggest Wauson Probus must do. Further, Wauson Probus stated neither of these Internet sites are official advertisements of Wauson Probus. The Court is unwilling to find these Internet sites to be official representations of the firm and the firm's services.

initial consultation in those advertisements and the Court does not find Wauson

Probus is improperly requesting an award for fees it would otherwise not bill to a

client.  Because these are authorized representations by Wauson Probus, the Court

finds it appropriate for Wauson Probus to bill for the consultation.

> 6.      *Reimbursement for fees which are generally excessive and not*
>         *billable*

Finally, CCS contends some of the hours billed by Wauson Probus are

excessive.  CCS cites Mr. Probus's experience in representing FDCPA claims and

states Mr. Probus should not have taken as much time as he did to draft the complaint.

CCS claims Wauson Probus uses a form for its complaint and reasons it could not

have taken as long as Wauson Probus billed to draft and file the Complaint.  CCS

requests the Court to decrease the number of hours for this task to 1.5 hours.

Additionally, CCS complains Wauson Probus spent too long drafting a settlement

demand letter.  CCS requests the Court to decrease the number of hours for this task

to 0.5 hours.  The Court declines to do so.  CCS does not cite any support for this

suggestion, CCS merely states it is a more reasonable estimate.  After a detailed

review of the time records, the Court believes the time Wauson Probus billed for the

tasks it performed is reasonable.  Wauson Probus is statutorily entitled to be

compensated for the reasonable time it spent on this matter and the Court refuses to

decrease the number of hours based merely on speculation.

**B.**    Reasonable Hourly Rate

Next, CCS argues $350.00 per hour for legal fees and $95.00 per hour for paraprofessional fees are not customary fees in the Southern District of Texas. Further, CCS contends Wauson Probus failed to establish the rates are customary in the Southern District of Texas.  As previously discussed, in setting a reasonable billing rate, courts are directed to consider the attorney's regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896.  Plaintiffs bear the  burden of demonstrating that the hours expended and rates charged by counsel are reasonable. *See Hensley*, 461 U.S. at 427.

Wauson Probus represents Mr. Probus's normal hourly billing rate is $350.00 per hour, and the rate is within the range of the market rates for attorneys similarly situated. First, Wauson Probus states $350.00 per hour is Mr. Probus's normal billing rate for these matters and is consistently paid the same rate for bankruptcy and commercial litigation matters by its clients.  Wauson Probus cites four specific occasions where district courts awarded a fee of $350.00 per hour for Mr. Probus's time, including a case filed in this Court in 2007.

To support its contention the rate is customary and within the range of market

13

rates, Wauson Probus cites *Turner v. Oxford Management Services, Inc.*, 552 F. Supp. 2d at 648, a case filed in this district, where United States District Judge Nancy Atlas awarded an attorney $300.00 per hour for time spent pursuing a FDCPA claim. The Court is also persuaded this is within the range of customary market rates because several courts have awarded Mr. Probus fees based on this hourly rate. CCS suggests the hourly rate is not within the market range because its attorney's hourly rate is less than Mr. Probus's. But the attorneys are not similarly situated. Mr. Probus represents plaintiffs seeking to recover in the Houston area and Mr. Sander, defense counsel, defends clients in the Austin area. Rates for plaintiffs attorneys and defense attorneys differ due to risk, number of clients, and other factors. Additionally, rates for attorneys in Houston differ from those in Austin because they are different markets. Accordingly, the Court finds the hourly rate is Mr. Probus's normal billing rate and is within the range of the market rates. The hourly rate billed for paraprofessional work is a nonissue because Wauson Probus withdrew its request to be compensated for that time.

The lodestar figure, 17.3 hours multiplied by $350.00 per hour, is $6,055.00, which is what Wauson Probus requests for its legal fees. Accordingly, the Court must determine whether the lodestar figure should be adjusted pursuant to any of the *Johnson* factors.

14

## II.   Adjusting the Lodestar Figure

Once the Court has computed the lodestar figure, the Court may adjust the lodestar upward or downward depending on the respective weights of the twelve factors articulated in *Johnson*. *Forbush*, 98 F.3d at 821. *See also*, *Johnson*, 488 F.2d at 717–19. In addition to the factors previously discussed, CCS specifically addresses five of the twelve *Johnson* factors including:  (1) whether the fee is fixed or contingent; (2) the amount involved and results obtained; (3) the experience reputation and ability of the attorney; (4) the undesireability of the case; and (5) the degree of success. *Johnson*, 488 F.2d at 717–19.  The Court will address these factors in turn.

### A.   Whether the fee is fixed or contingent

CCS contends Wauson Probus's representation of Plaintiff is on a contingency basis, relying on one of the Internet sites discussed earlier, which states "no recovery, no fee."  The Court has already addressed the accuracy of the information on the Internet sites.  The compilation of the listed attorneys on the Internet site appears to be the result of Internet scraping or other compilation method.  Additionally, Wauson Probus stated it was unaware of these listings.  The Court is unwilling to assume Wauson Probus represented Plaintiff on a contingency basis based on the Internet site listing.

### B.    The Amount Involved and Results Obtained

Both parties recognize the amount involved was small because Plaintiff recovered a total of $1,500 in damages.  But Wauson Probus correctly points out Congress mandates attorneys fees in the FDCPA, intending it to be a self-enforcing statute to prevent violations by debt collectors and provide a manner for violations to be redressed.  *See Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991); *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990).  Thus, the litigation served the public purpose of the statute and the result obtained was favorable.  *Graziano*, 950 F.2d at 113.

### C.    Experience, Reputation, and Ability of Attorney

Both parties agree Mr. Probus is experienced in litigating consumer complaints.  CCS argues, because of Mr. Probus's experience, the time spent and billed for was unreasonable.  The Court disagrees as previously discussed.

### D.    Undesirability of the Case

CCS states consumer cases are desirable because the prevailing party may be awarded attorneys' fees mandated by statute.  Conversely, Wauson Probus states consumer cases are usually undesirable because typically actual damages are small and the consumer can rarely afford to pay counsel, which is one of the reasons Congress included the award of attorneys fees in the statute.  These arguments

abrogate any effect this factor has in a determination of adjusting the lodestar figure.

E.     Degree of Success

CCS argues Plaintiff obtained limited success because Plaintiff recovered 10% of what she originally requested in her initial demand. The Court disagrees. The disparity between the final award of damages and the attorneys' fees and expenses sought in this case is not unusual and is necessary to enable individuals wronged by debt collectors to obtain competent counsel to prosecute claims. *Turner*, 552 F. Supp. 2d at 656.

CCS did not address all of the *Johnson* factors and the Court need not delineate reasons for its determination of the fee award under every single factor. *See, e.g., Forbush*, 98 F.3d at 823 ("[a] district court's *Johnson* analysis . . . need not be meticulously detailed"); *Louisiana Power & Light Co.*, 50 F.3d at 331 (stating the district court's findings need not "be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose."); *Diamond v. San Soucie*, 239 S.W.3d 428, 431 (Tex. App.—Dallas 2007, no pet.) (noting a court need not consider all the factors; "the factors are general guidelines for the court's consideration."). Additionally, some of the *Johnson* factors are subsumed in the initial lodestar calculation and should not be reconsidered in determining whether the lodestar figure should be adjusted. *See Saizan*, 448 F.3d at

17

800.  For example, the Court considered the reasonable time it took Wauson Probus to represent Plaintiff in the underlying litigation, the skill of Mr. Probus, and the customary fees charged for legal services.  After considering all of these factors, the Court declines to adjust the presumptively reasonable lodestar figure.  *See City of Burlington,* 505 U.S. at 562 ("We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee . . . .) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986)).  Accordingly, the Court finds the initial lodestar figure–$6,535.03–fairly and reasonably compensates Wauson Probus.

## CONCLUSION

Accordingly, the Court hereby

ORDERS that Wauson Probus' Application for Attorney's Fees and Expenses and Memorandum of Law in Support Thereof (Document No. 8) is GRANTED.  The Court further

ORDERS that Wauson Probus shall recover attorneys' fees in the amount of $6,055.00 from Defendant Central Credit Services, Inc.  The Court further

ORDERS that Wauson Probus shall recover costs in the amount of $480.08

from Defendant Central Credit Services, Inc.

SIGNED at Houston, Texas, on this *10* day of February 2010.

DAVID HITTNER
United States District Judge